

LEWIS AND ROCA LLP
LAWYERS

40 North Central Avenue
Phoenix, Arizona 85004-4429

Susan M. Freeman – Arizona State Bar No. 004199
E-mail: SFreeman@LRLaw.com
Telephone: (602) 262-5756
Facsimile: (602) 734-3824

Rob Charles, Arizona State Bar No. 7359
Email: RCharles@LRLaw.com
Telephone (520) 329-4427
Facsimile (520) 879-4705

Marvin R. Ruth – Arizona State Bar No.024220
E-mail: MRuth@LRLaw.com
Telephone (602) 262-5770
Facsimile: (602) 734-3909

Proposed Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MONDRIAN TTL, L.L.C., a Delaware limited liability company,<br><br>Debtor.<br><br>EID # 20-1473299 | Case No. 2:10-bk-14140-RJH<br><br>Case No. 2:10-bk-14141-JMM<br><br>Chapter: 11<br><br>Jointly Administered Under<br>Case No. 2:10-bk-14140-RJH |
| In re:<br><br>GRIGIO TTL, L.L.C., an Arizona limited liability company,<br><br>Debtor.<br><br>EID #20-5787568 | **DECLARATION OF BRIAN KEARNEY IN SUPPORT OF FIRST DAY MOTIONS**<br><br>Hearing Date: TBA<br>Hearing Time: TBA |

I, Brian Kearney, declare under penalty of perjury:

1. I am over the age of 18, am mentally competent, have personal knowledge of the facts in this matter based upon the business records of the entities described below; and if called upon to testify, could and would do so.

2. I am the Chief Operating Officer of GDG Enterprises, LLC ("GDG Enterprises"). GDG Enterprises is the sole member and manager of Mondrian Manager LLC, which in turn is the managing member of Mondrian TTL, L.L.C. ("Mondrian"). GDG Enterprises is also the managing member of Grigio TTL, L.L.C. ("Grigio").

2188689.4



## The Structure and Ownership of the Debtor Entities

3. Mondrian is a Delaware limited liability company. Mondrian's sole owner is Grigio, which is an Arizona limited liability company.

4. Grigio's primary owners are GDG Enterprises, which is an Arizona limited liability company, and Gray/Western Development Company, an Arizona corporation, which is wholly owned by Bruce W. Gray. Thirteen entities own small interests in Grigio as well.

## Debtors' Business and Assets

5. Mondrian is the owner of an apartment complex known as Grigio Tempe Town Lakes, in Tempe, Arizona (the "Apartment Building"); and is affiliated with multiple entities owned by Bruce Gray or entities he controls ("Gray Companies").

6. The Gray Companies buy land, obtain entitlements and zoning for construction of apartment buildings, arrange for the design and construction of the apartment buildings, lease the apartments to tenants, then sell the buildings as leased. The Gray Companies have built 28 such apartment communities in Arizona and other states and sold 17 of them. The business was profitable and successful until the recent economic downturn impaired the ability of potential purchasers of the buildings to obtain financing for such acquisitions, and made it impossible for Gray to find permanent financing to repay the current construction note owed by Mondrian.

7. The Apartment Building project commenced in 2005 and was completed in 2008. The Apartment Building is approximately 90 percent leased. Tenant leases are signed by individual tenants on a form listing the name of the Apartment Building owned by Mondrian.

8. The Apartment Building and other apartment buildings owned by Gray Companies are managed by Gray Residential, L.L.C. ("Gray Residential") pursuant to management agreements. Another Gray Company, GDG Partners, L.L.C. ("GDG Partners"), employs all persons who work at the Apartment Building and other Gray

2188689.4



1. Companies apartments. This arrangement allows properties affiliated with Gray Companies to obtain employee services at a lower cost than would be available without consolidated purchasing power. Gray Residential acquires and maintains property and liability insurance covering the Apartment Building and other Gray Companies apartments, with premiums paid by GDG Partners. This insurance program allows properties affiliated with Gray Companies to obtain necessary insurance coverage at a price and on terms more favorable to the properties than would be available without a consolidated program. Mondrian's allocated share of insurance premiums, employee wages and benefits, and other cost advances are charged to Mondrian on a regular basis by GDG Partners. Mondrian's last such payment for payroll of Apartment Building staff was made on May 7, 2010.

9. Mondrian directly contracts with vendors for operation and maintenance needs other than employees and insurance.

10. The Apartment Building and related improvements and the land on which the Apartment Building is located were conveyed to the City of Tempe and leased back to Mondrian pursuant to a Land and Improvements Lease (C2004-130C) dated as of November 30, 2009, pursuant to a Development Agreement dated as of June 23, 2004 (C2004-130). Under that agreement and the lease, the City granted to Mondrian statutorily-authorized Government Property Lease Excise Tax ("GPLET") status for a 35-year period. During the first eight years of the lease beginning in December 2009, Mondrian's rent in-lieu of property taxes will be $0 during the eight-year abatement period. Mondrian pays nominal rent to the City, may lien its leasehold interest (and has done so to first and second lienholders, as noted below), and is entitled to transfer its leasehold interest freely.

2188689.4



**The Secured Creditors**

     **A.    KeyBank - Now TPG (Grigio) Note Acquisition LLC**

     11.    Mondrian's principal secured debt is in the amount of $62,675,000 ("Senior Note"), collateralized by a first priority security interest in the Apartment Building. The original lender was KeyBank.

     12.    The Senior Note matured in March 2009. KeyBank did not issue a default notice. Mondrian and KeyBank entered into a forbearance agreement that expired in March 2010, although payments continue to be made as provided by the forbearance agreement. Mondrian has tried to refinance the Senior Note, but in light of the constraints of the current capital markets, has not succeeded in that effort.

     13.    Bruce Gray, GDG Enterprises, L.L.C. and Gray Meyer Fannin, L.L.C. guaranteed the Senior Note. The guaranty amount is currently 50 percent of the amount of the debt.

     14.    Interest on the Senior Note is payable at the prime rate (currently 3.25%) on $62 million (the initial construction loan) and at 15% on $675,000 (an advance made when the parties entered into the 2009 forbearance agreement). Default rate interest has not been charged on the Senior Note.

     15.    Under the forbearance agreement with KeyBank, as later amended, tenant rent payments have been made directly to a controlled account at KeyBank, and related income and tenant payments by manual checks were deposited into the same account. By the 15th of each month, Mondrian submitted a list of its proposed expenditures with supporting documents to KeyBank. The rental and related income was used to pay, in the following order: (1) monthly reserves for estimated tax/CFD, GPLET and insurance payments, (2) operation and maintenance expenses, (3) reimbursement to KeyBank for any costs and expenses incurred in connection with the forbearance agreement, (4) interest on the $675,000 KeyBank advance and the $62 million construction loan, and (5) the balance directed to an escrow account at KeyBank for City of Tempe deferred water



and sewer assessments estimated at $1.9 million. Any excess amount would be used to pay the principal amount of the Senior Note.

16. Monthly income generated by tenants has been sufficient to pay the waterfall obligations, including interest on the Senior Note, but not full payment of the water and sewer escrow and thus not principal on the Senior Note. Approximately $250,000 to $350,000 has been deposited and spent each month under this arrangement since December 2009.

17. On May 5, 2010, Mondrian was advised that KeyBank had sold the Senior Note to TPG (Grigio) Note Acquisition LLC, which Mondrian understands is an entity formed and owned by The Picerne Group, Inc. ("Picerne") at an unknown discounted amount.

18. Mondrian and Grigio were unsuccessful in their efforts to negotiate arrangements to satisfy the KeyBank debt before the sale to Picerne, having been told by KeyBank that it would accept only par from Mondrian and Grigio while accepting less from Picerne.

**B.     City of Tempe**

19. The City of Tempe holds a second priority security interest in the Apartment Building in the principal amount of $10 million, with accrued and deferred interest at 5%. The City indebtedness is owed by GDG Partners, and Mondrian in turn owes GDG Partners under a $10 million note secured by a deed of trust. The debt is derived from a settlement of various claims by Gray Companies against the City entered into on June 15, 2006. Under the settlement agreement, the City advanced $10 million to GDG Partners which GDG Partners used for the Mondrian Apartment Building. GDG Partners undertook other obligations in the settlement agreement, including paying for the replacement of the rubber dams that form Tempe Town Lake. GDG Partners assigned to the City its beneficial interest in the Mondrian second priority deed of trust to secure that obligation.

2188689.4



20. Pursuant to a Subordination and Intercreditor Agreement dated as of November 21, 2006, as amended, the City of Tempe agreed that it would receive no payment on its junior secured indebtedness until the Senior Note is paid in full with all interest and other payments due under the Senior Note loan documents.

### C. Babson Mezzanine

21. Mondrian is indebted to Cornerstone Real Estate Advisers, LLC (f/k/a Babson Mezzanine Realty Advisors LP) ("Babson"). The principal amount of the Babson debt is $8,600,000, and it accrues interest at 15% per annum, or, in the event of a default, at 17% per annum, pursuant to a Loan Agreement entered into by Mondrian and Babson on November 21, 2006 (the "Babson Note"). The Babson Note is secured by Grigio's 100 percent membership interest in Mondrian pursuant to a Membership Pledge and Security Agreement entered into by Grigio and Babson on November 21, 2006 (the "Pledge Agreement"). Pursuant to the Babson Note, an event of default exists if Mondrian is in default under the loan agreement with KeyBank. Consequently, the Babson Note is now in default. Mondrian and Grigio have been unsuccessful in their efforts to negotiate arrangements to satisfy the Babson debt.

22. Pursuant to an Intercreditor Agreement dated as of November 21, 2006, as amended, Babson agreed that it would receive no payment on the Babson Note until the Senior Note is paid in full with all interest and other payments due under the Senior Note loan documents.

23. Under the Babson Note and the Pledge Agreement, Babson has the right to enforce its security interest in Grigio's membership interest in Mondrian and thereby take control of Mondrian. The Debtors have been advised that Picerne may be acquiring the Babson Note and plan to take such action, prompting these bankruptcy filings.

2188689.4



**Utility Suppliers and Critical Utility Vendor**

24. As noted above, the Apartment Building is 88-90% leased. It "cash flows." The income from tenant rental is sufficient to pay operating and maintenance costs, necessary escrows, and even interest on the first priority secured debt. Mondrian is current on its obligations to vendors, but some amounts have accrued and but for the bankruptcy filings, a disbursement request would be submitted to KeyBank on May 15, 2010 for payment in the ordinary course.

25. While many of Mondrian's vendors could be replaced by competitors, a few are unique and truly critical to continued operation of the Apartment Building, or would be very disruptive to tenants if Mondrian had to replace them.

26. In connection with the operation of its business, Mondrian obtains services from various utilities for, among other things, water, sanitation, natural gas, electricity, telecommunications, cable television, and similar utility services (collectively, the "Utility Services") from several utility companies (collectively, the "Utility Companies"). A non-exhaustive list of the names, addresses, and account numbers of all or substantially all of the Utility Companies that are currently providing services to Mondrian is attached as Exhibit A.

27. Uninterrupted Utility Services are crucial to Mondrian's ability to sustain its current operation of the Apartment Building and preserve its value for the benefit of creditors. Should the Apartment Building lose access to the Utility Services, the tenants could attempt to terminate their leases and relocate, depriving Mondrian of its income stream. Consequently and given the essential nature of the Utility Services, if the Utility Companies are permitted to terminate Utility Services, even for a short time, Mondrian will either (a) risk lose its paying tenants and be forced to shut down operations or (b) be forced to pay any amounts demanded by the Utility Companies to avoid the cessation of necessary and critical Utility Services.

2188689.4



28. Pavlov Media, f/k/a Fusion Broadband, Inc. ("Fusion Broadband") is a critical vendor to Mondrian. It supplies all of the cable television, internet and data products and services for tenants of the Apartment Building. It would be extraordinarily difficult, burdensome and disruptive to change cable providers. Fusion Broadband has incurred substantial costs in the installation of equipment and systems required to provide internet and video services to all of the Apartment Building tenants. Continued uninterrupted services to tenants is very important to Mondrian's business operation and successful rehabilitation. If Mondrian loses its current cable and internet data provider, (a) its ability to generate revenue is likely to suffer due to decreased lease income, (b) Mondrian will be forced to incur unnecessary costs by attempting to replace the services Fusion Broadband already provides, (c) to the extent it is possible to provide tenants with an alternative cable and data services, those tenants will face a service interruption; and (d) Mondrian's potential resulting loss of revenue will disrupt its operations and otherwise harm its reorganization efforts. Mondrian has considered Fusion Broadband to be a utility. If not deemed a utility for purposes of the Bankruptcy Code, it is extremely important to Mondrian and to tenants of the Apartment Building that Fusion Broadband services continue uninterrupted, whether through treatment as a utility provider under the Bankruptcy Code or through authorized payment of the portion of the next invoices that accrued prepetition.

**Honoring Tenant Security Deposits and Other Contract Terms**

29. Mondrian's tenants are the lifeblood of its business operations. It needs to be able to honor all tenant rental agreements in full, whether obligations arise prepetition or postpetition.

30. When tenants signs leases to rent apartments in the Apartment Building, they are required to provide security deposits and, if they have pets in their units, pet deposits as well. These deposits are refundable if the tenants are current on all obligations and return the apartment units in the specified condition of quality and repair.

2188689.4



31. Mondrian maintains a separate, segregated bank account for all security and pet deposits. The money is not commingled with other accounts. It is critical that Mondrian have access to the security deposit account money and that it be moved with other DIP bank accounts to enable ready access to those funds when needed to comply with tenant refund obligations.

32. It is critical for retention of tenants and good tenant relations that Mondrian be allowed to honor all tenant security and pet deposits, whether made prepetition or postpetition, along with all other terms and conditions of tenant leases. If a tenant's lease expires postpetition, and his or her deposit was made prepetition, Mondrian needs to be able to refund the deposit.

33. There is one other instance in which Mondrian may owe a tenant money when a unit lease expires. Some tenants arrange for automatic deductions from their bank accounts for payment of their rent. Some tenants' leases expire mid-month. Occasionally, a tenant may have paid for a full month's rent, generally through automatic payment arrangements, while leaving upon lease expiration mid-month. Mondrian needs to be able to refund any excess payment of rent in such circumstances.

**Refinancing and Sale Efforts**

34. As the Court undoubtedly knows, American and world capital markets have been constricted since at least the bankruptcy filing by Lehman Brothers Holdings, Inc. in September 2008, so that it is extremely difficult to refinance indebtedness, and also for potential buyers of apartment complexes and other properties to obtain financing for such acquisitions. Mondrian has been affected by these market problems.

35. The Apartment Building has not been appraised since September 2008 (at approximately $124 million). Debtors are confident that the Apartment Building is worth at least $70 million, even in the present market. I am aware of a recent pending sale 15 miles north of Grigio, supporting $150,000 per apartment unit. That would equate to $78 million in value for the Apartment Building; however, current oversupply from new,

2188689.4



nearby competition may warrant a discount of 5%-10%, resulting in a value of roughly $70 million to $78 million.

36. Recently, Mondrian located a potential source of recapitalization of the Apartment Building, Canyon-Johnson Urban Fund III L.P. That company has expressed interest in forming an entity that would buy the Apartment Building for an amount more than sufficient to satisfy in full the first priority Senior Note formerly held by KeyBank, with additional funds remaining.

37. Mondrian is concerned that it will not have sufficient time to consummate a transaction that will satisfy all or most of its indebtedness before Picerne exercises remedies under the Senior Note and possibly also Babson obligations. For that reason, it has filed these bankruptcy cases to pursue a course of action in the best interest of all of its creditors.

**Adequate Protection of Secured Creditors**

38. Mondrian needs to use tenant income held at KeyBank in controlled accounts assigned to Picerne, and to continue using post-petition tenant income to pay operating and maintenance expenses and required escrows. It must have access to cash collateral to operate the Apartment Building and provide necessary services to the tenants. As the cash flow from the Apartment Building exceeds the operating expenses, accruing tax obligations, and is sufficient to pay interest on the Senior Note, using tenant income for this purpose in and of itself provides a significant form of adequate protection to secured creditors, by supporting and enabling an ongoing flow of tenant income.

39. Management has prepared a budget of operating income and expense for the Apartment Building for 2010, broken down by month (the "Budget"). A copy of the Budget is attached and incorporated as Exhibit B. Actual income and expenses for the first quarter of 2010 have been less than the budgeted amounts, fluctuating within a range of approximately 10%. Mondrian proposes to pay the actual expenses needed to properly

2188689.4



manage and maintain the value of the Apartment Building, which are expected to be consistent with but somewhat less than the amounts reflected in the Budget.

40. Mondrian is willing to continue paying interest at the non-default rate, as it has for some time, to Picerne as the successor to KeyBank. Mondrian is also willing to grant a replacement lien to Picerne in the same assets, to the same extent and in the same priority as the lender had before the bankruptcy filing.

41. Mondrian proposes to continue its prepetition treatment of the City of Tempe's secured claim as well, with a second priority replacement lien in the same assets, to the same extent and in the same priority as the City had before the bankruptcy filing. While the cash flow has not been sufficient to pay interest on the City's claim, use of tenant income to operate and maintain the property provides adequate protection to the City until a transaction under a plan can be effected to pay the City along with other Mondrian creditors.

42. Babson only holds a security interest in the equity ownership of Mondrian. The creditor claims exceed the value of Mondrian's assets.

I verify under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge, and belief.

DATED this 9th day of May, 2010.

By _____
Brian Kearney

2188689.4