
40 North Central Avenue
Phoenix, Arizona 85004-4429

Susan M. Freeman, Arizona State Bar No. 004199
  E-mail: SFreeman@LRLaw.com
  Telephone: (602) 262-5756
  Facsimile: (602) 734-3824
Robert M. Charles, Jr., Arizona State Bar No. 7359
  Email: RCharles@LRLaw.com
  Telephone: (520) 629-4427
  Facsimile: (520) 879-4705
Marvin C. Ruth, Arizona State Bar No. 024220
  E-mail: MRuth@LRLaw.com
  Telephone: (602) 262-5770
  Facsimile: (602) 734-3909

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>MONDRIAN TTL, L.L.C., a Delaware limited liability company,<br>　　　　　　　　　　　Debtor. | Chapter: 11<br>Jointly Administered<br>Case No. 2:10-bk-14140-RJH |
| In re:<br>GRIGIO TTL, L.L.C., an Arizona limited liability company,<br>　　　　　　　　　　　Debtor. | Case No. 2:10-bk-14141-RJH<br>Debtors' Motion to Dismiss |

Mondrian TTL, LLC ("Mondrian") and Grigio TTL, LLC ("Grigio") (the "Debtors"), move the Court for an order, pursuant to Bankruptcy Code section 1112(b) and Federal Rule of Bankruptcy Procedure 1017(d), dismissing Debtors' chapter 11 cases and finding that Federal Rules of Bankruptcy Procedure 7062 and 6004(h) do not apply to the dismissal order.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.　　STATEMENT OF FACTS

**A. The Debtors seek bankruptcy protection**

Mondrian owns the Grigio Apartments at Tempe Town Lake, 1001 E. Playa Del Norte, Tempe, AZ 85281 (the "Project"), and Grigio owns Mondrian. The Project is



encumbered by a senior lien in favor of TPG (Grigio) Note Acquisition, LLC ("Senior Lender"), and a second position lien in favor of the City of Tempe ("Tempe"). In addition, TPG (Grigio) Mezzanine, LLC ("Mezz Lender," together with Senior Lender, the "Lenders") holds a note secured by Grigio's equity interest in Mondrian.

On May 9, 2010 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in order to consummate a sales transaction with Canyon Johnson Urban Fund, III LLC ("CJUF"), which would have satisfied most of the indebtedness owed, before the Lenders could foreclose on the Project, or Grigio's equity interest in the Project.

That proposed sales transaction never took place. On July 23, 2010, Debtors filed their Plan of Reorganization and Disclosure Statement [DE 119, 120]. That disclosure statement was met by objections from the Lenders [DE 151, 152], and Tempe informed Debtors that it would not support the plan. On September 1, 2010, Debtors filed an amended plan and disclosure statement [DE 168, 169]. The Lenders [DE 182, 231] and Tempe [DE 234] opposed the plan and disclosure statement. Tempe also subsequently objected to Debtors' motion to assume its lease with Tempe [DE 272]. In addition, the Lenders and Tempe sought to terminate Debtors' exclusivity period [DE 191, 198], and on November 9, 2010, the Lenders filed a competing plan of reorganization [DE 253].

The Lenders also each filed motions for stay relief [DE 84, 87], and each sought to continue litigation against the guarantors of the debts owed (Adv. No. 2:10-ap-01210-RJH, Adv. No. 2:10-ap-01247-RJH) (the "Adversary Litigation"), including motions to remand the cases back to Maricopa County Superior Court.

**B. The Debtors And Lenders Resolved Their Disputes**

Rather than continue to expend estate assets litigating the merits of the Debtors' plan, the Lenders' plan, the lift stay motions, the Adversary Litigation, and the motion to assume the Tempe lease, the Debtors and Lenders reached an agreement that resolves all material issues between them, and that incorporates the Lenders' prior agreement with

2292014.3



Tempe, thereby resolving all material issues with Tempe. A copy of the binding letter of intent (the "LOI") between Debtors and Lenders is attached hereto as Exhibit 1. In summary:

- A bankruptcy remote affiliate of the Lenders ("Optionor") will take title to the GPLET leasehold and the Project pursuant to a deed in lieu of foreclosure, thereby satisfying Lenders' claims.
- A bankruptcy remote affiliate of the Debtors ("Optionee") will get a purchase option with respect to the GPLET lease and the Project (which shall be freely assignable to Optionee without need for any third-party approvals or consents) that is exercisable any time up through November 30, 2013.
- An affiliate of the Debtors will manage the property pursuant to an agreed-on property management agreement between said affiliate and the Optionor.
- At closing, Tempe will release its secured interests in the Project in favor of a restructured GPLET lease, all as set forth in the Agreement Among Creditors executed by the Lenders and Tempe, a copy of which is attached as Exhibit D to the Settlement Agreement, and which will be assumable, including by the Optionee upon exercise of the option. This will satisfy Tempe's claims.
- Debtors' equity holders will not receive anything under the LOI. After closing, all of Debtors' monetary assets will be disbursed, and the Project will be owned by another entity.
- Debtors and Lenders will execute comprehensive mutual releases with respect to known and unknown claims pertaining to the Project, the guaranties, and the bankruptcy cases. The releases will included claims against Debtors, Lenders, CJUF, Babson Mezzanine Realty Investors LP (predecessor to Mezz Lender), Cornerstone, Massachusetts Mutual, and the

2292014.3



affiliates, members, insiders, officers, directors, and advisors of the foregoing. To be clear, the Adversary Litigation will be dismissed with prejudice to any refiling in any court, which dismissals shall be in conjunction with and effective upon the dismissal of the administrative bankruptcy case.

The LOI and related agreements provide for all creditors' claims including, but not limited to, the Mezz Lender and Tempe, other than general unsecured creditors (the "Remaining Creditors"). Attached hereto as Exhibit 2 is a spreadsheet listing the Remaining Creditors, the amount each is owed in the greater amount of that shown on Debtors' Schedules or such Remaining Creditor's proof of claim, if one was filed. The amounts owed to the Remaining Creditors as reflected in Exhibit 2 will be paid in full after dismissal, and any amounts due and owing to the U.S. Trustee will be paid before dismissal.

The Debtors no longer need bankruptcy court protection. More particularly, all creditors have approved the LOI and subsequent dismissal of the case, or will be paid in full.

### C. The Method For Paying The Remaining Creditors

Prior to closing, the Lenders will deposit: (i) cash sufficient to pay administrative claims and any priority expenses, which at this point consist solely of the reimbursement of an estimated $6,500 due to the U.S. Trustee and paid before dismissal, plus (ii) $150,000 to pay unsecured creditor claims, plus (iii) $257,688.23 to reimburse Debtors for installments of certain assessments paid to Tempe, plus (iv) $150,000. In addition to the funds deposited by Optionor as outlined above, Debtors will have cash on hand in their DIP accounts, and a Debtor affiliate, GDG Enterprises, LLC, will deposit an additional amount (estimated at $32,255) into the DIP account. The following chart summarizes the sources and uses of the funds necessary to close the transactions set forth in the LOI:

2292014.3



**Sources**

| | |
|---|---:|
| Mondrian Cash | |
|     Est Operating Account @ Closing | 967,000 |
|     Tax/Insurance Reserve | 267,635 |
|     Total Est. Mondrian Cash @ Closing | 1,234,635 |
| | |
| Payments by TPG | |
|     Reimbursement for Rio Salado/Miller Road | 257,688 |
|     For Class 4 Creditors | 150,000 |
|     Estimated Trustee Fees | 6,500 |
|     Additional Cash | 150,000 |
|     Total From TPG | 564,188 |
| | |
| Grigio TTL Cash | 20,023 |
| | |
| Shortfall To Be Paid By GDGE | 33,255 |
| | |
| **Total Sources** | **1,852,101** |

**Uses (Payments To Be Made By Debtors)**

| | |
|---|---:|
| Estimated Trustee Fees | 6,500 |
| Class 4 Creditors | 150,601 |
| L&R Legal Fees Not Covered by Retainer | 400,000 |
| CJ Extension/Breakup Fee | 1,295,000 |
| | |
| **Total Uses** | **1,852,101** |

The U.S. Trustee's fees will be paid from the DIP account on the dismissal hearing date. The funds set forth in the paragraph above will be placed in an escrow account for prompt payment in full of the Remaining Creditors' claims, Debtors' attorneys' fees,[1] and an agreed payment to CJUF of (a) $295,000 as a fee to extend the closing date for its plan transaction (enabling Debtors to negotiate with Lenders, and to continue to pursue their plan if the Lenders' settlement was not consummated), and (b) $1 million to compensate CJUF for its time, effort and commitment to funding Debtors' plan transaction. Those

---

[1] To the extent the funds are insufficient to pay the agreed upon Debtors' attorneys' fees, GDG Enterprises, LLC, an affiliate of the Debtors, shall pay the remaining fees owed.

2292014.3



payments will be made *after* the bankruptcy cases are dismissed.

Once the order dismissing the bankruptcy cases is entered, the funds (other than those used to pay the U.S. Trustee's fees) will go into an escrow account. The Debtors shall execute and file with the Court a certification that all amounts required to be funded by Lenders and by Debtors and by GDG Enterprises, LLC have been funded into escrow, and that the total amounts required for the LOI (as further documented) to take effect have been funded. A certification filed with the Court will state that the amounts owing in accordance with the LOI (as further documented) and this Motion, have been disbursed.

Debtors and Lenders shall also file with the Court, prior to the hearing on this Motion, the operative documents necessary to implement the LOI, including, but not limited to, the Settlement Agreement, the deed in lieu of foreclosure, and the escrow instructions.

## II. ARGUMENT

### A. **A Chapter 11 Case May Be Dismissed Voluntarily By A Debtor Under 11 U.S.C. § 1112(b) Unless Dismissal Would Cause Some "Plain Legal Prejudice" To Creditors**.

Bankruptcy Code section 1112(b) allows the Court, upon request of a party in interest, to dismiss a chapter 11 case "for cause." 11 U.S.C. § 1112(b). Although section 1112(b) enumerates various grounds for dismissal, the section's use of the term "includes" is not limiting. *See* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"). Accordingly, courts have held that "cause" for purposes of Bankruptcy Code section 1112(b) may include any reasonable grounds justifying dismissal, whether or not expressly stated in the Bankruptcy Code.[2] *See In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990).

---

[2] Local Bankruptcy Rule 9013-1(2) requires that a motion by the debtor to dismiss a case "shall fully disclose any arrangement or agreement between the debtor or creditors or any other person in connection with the motion for dismissal...." Local Bankruptcy Rule 9013-1(2). The Motion and supporting Memorandum fully disclose such arrangements or agreements.

2292014.3



Courts generally grant requests for voluntary dismissal unless to do so would result in some "plain legal prejudice" to creditors. 11 U.S.C. § 1112(b) (court shall dismiss case "absent unusual circumstances specifically identified by the court that establish that the requested …dismissal is not in the best interests of creditors and the estate"); *In re Bartee*, 317 B.R. 362, 366 (9th Cir. BAP 2004) ("a voluntary Chapter 7 debtor is entitled to dismissal of his case so long as such dismissal will cause no legal prejudice to interested parties"); *In re Sanders*, 417 B.R. 596, 602 (D. Ariz. 2009) ("While a debtor may voluntarily choose to place himself in bankruptcy, he does not enjoy the same discretion to withdraw his case once it has been commenced. If dismissal will prejudice interested parties, a court may refuse to allow a debtor to dismiss the petition") (internal citations and quotations omitted). As one court has stated, "a debtor wishing dismissal of a case should obtain this result in all but extraordinary situations." *In re Geller*, 74 B.R. 685, 689 (Bankr. E.D. Pa. 1987).

**B. Dismissing This Case Will Not Prejudice Any Creditors.**

Dismissal of Debtors' chapter 11 cases clearly will not prejudice any creditors. Debtors have reached a consensual resolution of their disputes with the Lenders pursuant to the LOI, which expressly states that the "expected and preferred resolution is a dismissal of the case concurrently with implementation of the new structure." Exhibit 1 at 3, § 2.1. Moreover, Tempe is receiving the treatment to which it contractually agreed with the Lenders, and the only other creditors will be paid in full from an escrow account after the case is dismissed. Absent dismissal, Debtors will lose the valuable opportunity to consummate the LOI, and costly and protracted litigation regarding Debtors' Amended Plan of Reorganization and Lenders' Joint Plan of Reorganization will ensue. Such litigation will deplete assets of the estate and delay payments to the Remaining Creditors.



### C. The Court Should Direct That Federal Rule Of Bankruptcy Procedure 7062 Does Not Apply To The Order Granting The Motion And Find That The Dismissal Order And All Of Its Provisions Shall Be In Full Force And Effect In Accordance With 11 U.S.C. § 349.

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1017(f)(1) states that a proceeding to dismiss a case under Bankruptcy Code section 1112(b) is governed by Bankruptcy Rule 9014.  Fed. R. Bankr. P. 1017(f)(1).  Bankruptcy Rule 9014 provides that "Unless the court otherwise directs," Bankruptcy Rule 7062 shall apply.  Fed. R. Bankr. P. 9014.  Bankruptcy Rule 7062 incorporates Federal Rule of Civil Procedure 62, which in turn provides that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 14 days after its entry."  Fed. R. Bankr. P. 7062.

The Court should direct that Bankruptcy Rule 7062 not apply to the order granting the Motion.  Because the Debtors must obtain the dismissal order in conjunction with consummation of the LOI, arguably Bankruptcy Rule 7062 would preclude such consummation until 10 days after the entry of the order dismissing the Debtor's case.  This would unnecessarily delay payments to the Remaining Creditors and jeopardize the timing of the contemplated transaction.  Accordingly, and out of an abundance of caution, Debtors request that in its order granting the Motion, the Court provide that Bankruptcy Rule 7062 does not apply to the dismissal order.

Finally, Debtors request that the Court find, in accordance with 11 U.S.C. § 349, that the dismissal order and all of its provisions will have full force and effect, as will the orders dismissing the Adversary Litigation with prejudice.

### III.  CONCLUSION

Based on the facts and arguments set forth above, Debtors respectfully request that the Court enter its order (a) dismissing the Debtors' chapter 11 cases because cause exists for such dismissal pursuant to Bankruptcy Code section 1112(b) and Federal Rules of Bankruptcy Procedure 1017(d), (b) dismissing Debtors' chapter 11 cases and finding that

2292014.3



Federal Rule of Bankruptcy Procedure 7062 not apply to the dismissal order; and (c) finding that, in accordance with 11 U.S.C. § 349, the dismissal order and all of its provisions and the Adversary Litigation dismissal orders will have full force and effect

**LEWIS AND ROCA LLP**

By /s/ Susan M. Freeman (#004199)
    Susan M. Freeman
    Robert M. Charles, Jr.
    Marvin C. Ruth
Attorneys for Debtors

Copy of the foregoing served via
e-mail on December 6, 2010 to:

Steven N. Berger
 snb@engelmanberger.com
Scott B. Cohen
 sbc@engelmanberger.com
Patrick A. Clisham
 pac@engelmanberger.com
Engelman Berger, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012
Attorneys for TPG (Grigio) Note Acquisition, LLC

James E. Cross
 jcross@omlaw.com
Warren J. Stapleton
 wstapleton@omlaw.com
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2794
Attorneys for TPG (Grigio) Mezzanine, LLC

William Novotny
 William.notony@mwmf.com
Mariscal, Weeks, McIntyre & Friedlander, P.A.
2901 North Central Avenue, Suite 200
Phoenix, Arizona 85012-2705
Attorneys for City of Tempe

Edward K. Bernatavicius
 Edward.k.bernatavicius@usdoj.gov
Office of U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003

/s/ Marie Mancino
Lewis and Roca LLP

2292014.3