# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| MONDRIAN TTL, L.L.C., a Delaware limited liability company, | Case No. 2:10-bk-14140-RJH<br>Case No. 2:10-bk-14141-RJH |
| Debtor. | (Jointly Administered) |
| In re:<br>GRIGIO TTL, L.L.C., an Arizona limited liability company,<br>Debtor. | **Declaration of Lee Johnson in Support of Motion to Dismiss** |

I, Lee Johnson, declare under penalty of perjury:

1. I am over the age of 18, am mentally competent, have personal knowledge of the facts in this matter based upon the business records of the entities described below; and if called upon to testify, could and would do so.

2. I am acting as the Chief Financial Officer for the above-captioned Debtors. I have served in that capacity since approximately August 2009.

3. The Debtors and TPG (Grigio) Note Acquisition, LLC ("Senior Lender") and TPG (Grigio) Mezzanine, LLC ("Mezz Lender," together with Senior Lender, the "Lenders") have reached an agreement that resolves all material issues between them, and that incorporates the Lenders' prior agreement with the City of Tempe ("Tempe"), thereby resolving all material issues with Tempe. A true and correct copy of the binding letter of intent (the "LOI") between Debtors and Lenders is attached as Exhibit 1 to the Debtors' Motion to Dismiss.

2279141.2

4. In summary, under the LOI,

   a. A bankruptcy remote affiliate of the Lenders ("Optionor") will take title to the GPLET leasehold and the project at Tempe Town Lake, 1001 E. Playa Del Norte, Tempe, AZ 85281 (the "Project"), pursuant to a deed in lieu of foreclosure, thereby satisfying Lenders' claims.

   b. A bankruptcy remote affiliate of the Debtors ("Optionee") will get a purchase option with respect to the GPLET lease and the Project (which shall be freely assignable to Optionee without need for any third-party approvals or consents) that is exercisable any time up through November 30, 2013.

   c. An affiliate of the Debtors will manage the property pursuant to an agreed-on property management agreement between said affiliate and the Optionor.

   d. At closing, Tempe will release its secured interests in the Project in favor of a restructured GPLET lease, all as set forth in the Agreement Among Creditors executed by the Lenders and Tempe, a true and correct copy of which is attached to the Motion to Dismiss as Exhibit D to the LOI. This will satisfy Tempe's claims.

   e. Debtors' equity holders will not receive anything under the LOI. After closing, all of Debtors' monetary assets will be disbursed, and the Project will be owned by another entity.

   f. Debtors and Lenders will execute comprehensive mutual releases with respect to known and unknown claims pertaining to the Project, the guaranties, and the bankruptcy cases. The releases will included claims against Debtors, Lenders, CJUF, Babson Mezzanine Realty Investors LP (predecessor to Mezz Lender), Cornerstone, Massachusetts Mutual, and the affiliates, members, insiders, officers, directors, and advisors of the foregoing. As part of those releases, the adversary litigation against

guarantors of the debts Debtors owe the Lenders (Adv. No. 2:10-ap-01210-RJH and Adv. No. 2:10-ap-01247-RJH) will be dismissed with prejudice to any refilling in any court, which dismissals shall be in conjunction with and effective upon the dismissal of the administrative bankruptcy case.

5. Debtors have decided to proceed with the dismissal on agreed terms and conditions because it will result in all creditors either being paid in full or receiving treatment satisfactory to such creditors. There is insufficient value in the Project at this time to enable equity owners to receive any distributions, as was evident from the plans and disclosure statements filed in these cases. The bankruptcy cases have been longer, more litigious and more costly than Gray expected, and litigation to resolve challenges to the reorganization plan would continue to delay payments to creditors as well as be extremely costly. Under this settlement, if the Project value does increase in the future, as Gray expects, Gray will be able to benefit by exercising its purchase option. The Lender-affiliate acquiring the property at this time and the optionee will both be bankruptcy-remote entities to avoid future bankruptcy litigation.

6. Debtors and Lenders shall file with the Court, prior to the hearing on this Motion, the operative documents necessary to implement the LOI, including, but not limited to, the Settlement Agreement, the deed in lieu of foreclosure, and the escrow instructions.

7. The LOI and related agreements provide for agreed treatment of the Lenders' claims and Tempe's claims, and provide for full payment of general unsecured creditors (the "Remaining Creditors") upon dismissal, instead of after plan-related litigation concludes. Attached to the Motion to Dismiss as Exhibit 2 is a true and correct spreadsheet prepared under my supervision listing the Remaining Creditors, and the amount each is owed pursuant to the greater of the amount listed on the Debtors' Schedules or the amount set forth on such Remaining Creditor's proof of claim, if one was filed. Debtors are not objecting to any of the Remaining Creditors' timely-filed proofs of

2279141.2

claim. The amounts owed to the Remaining Creditors as reflected in Exhibit 2 will be paid in full promptly upon dismissal of the cases, and amounts due and owing to the U.S. Trustee will be paid on the date of the dismissal hearing.

8. In order to fund the payments required under the LOI, prior to closing, the Lenders will deposit: (i) cash sufficient to pay administrative claims and any priority expenses, which at this point consist solely of an estimated $6,500 due to the U.S. Trustee, plus (ii) $150,000 to pay unsecured creditor claims, plus (iii) $257,688.23 to reimburse Debtors for installments of certain assessments paid to Tempe, plus (iv) $150,000. In addition to the funds deposited by Optionor as outlined above, Debtors will have cash on hand in their DIP accounts, and a Debtor affiliate, GDG Enterprises, LLC, will deposit an additional amount needed to close, estimated at $32,255, into the DIP account. The following chart is an accurate summarization regarding the sources and uses of the funds necessary to close:

**Sources**

| | | |
|---|---|---:|
| Mondrian Cash | | |
| | Est. Operating Account @ Closing | 967,000 |
| | Tax/Insurance Reserve | 267,635 |
| | Total Est. Mondrian Cash @ Closing | 1,234,635 |
| | | |
| Payments by TPG | | |
| | Reimbursement for Rio Salado/Miller Road | 257,688 |
| | Class 4 Creditors | 150,000 |
| | Estimated U.S. Trustee Fees | 6,500 |
| | Additional Cash | 150,000 |
| | Total From TPG | 564,188 |
| | | |
| Grigio TTL Cash | | 20,023 |
| | | |
| Est. Shortfall To Be Paid By GDGE | | 33,255 |
| | | |
| **Total Sources** | | **1,852,101** |

4

**Uses (Payments To Be Made By Debtors)**

| | |
|---|---:|
| Estimated Trustee Fees | 6,500 |
| Class 4 Creditors | 150,601 |
| L&R Legal Fees Not Covered by Retainer | 400,000 |
| CJ Extension/Breakup Fee | 1,295,000 |
| **Total Uses** | **1,852,101** |

9. The U.S. Trustee's fees will be paid from the DIP account. The funds set forth in the paragraph above will be placed in an escrow account for prompt payment in full of the Remaining Creditors' claims, Debtors' attorneys' fees, and an agreed payment to CJUF of (a) $295,000 as a fee to extend the closing date for its plan transaction (enabling Debtors to negotiate with Lenders, and to continue to pursue their plan if the Lenders' settlement was not consummated), and (b) $1 million to compensate CJUF for its time, effort and commitment to funding Debtors' plan transaction. Those payments will be made *after* the bankruptcy cases are dismissed.

10. Debtors' attorneys, Lewis and Roca, agreed to reduce their fees incurred at the standard rates reflected in their employment application to $500,000 through November 29, 2010, of which $100,000 would be satisfied by the $100,000 retainer on hand, with fees incurred thereafter paid by GDG Enterprises, LLC, an affiliate of the Debtors (which shall also be responsible for any shortfall in the $500,000 amount due).

11. Once the order dismissing the bankruptcy cases is entered, the funds (other than those used to pay the U.S. Trustee's fees) will go into an escrow account. The Debtors shall execute and file with the Court a certification that all amounts required to be funded by Lenders and by Debtors and by GDG Enterprises, LLC have been funded into escrow, and that the total amounts required for the settlement agreement to take effect have been funded.

12. A certification shall also state that the amounts owing in accordance with the LOI, as further documented, and the Motion have been disbursed.

I verify under penalty of perjury that the foregoing statement is true and correct. Executed on December 6, 2010.

_/s/ Lee Johnson_
Lee Johnson

2279141.2